**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*v.*<br><br>**MATTHEW CHRISTOPHER YATES,**<br><br>*Defendant.* | Case No. 3:22-cr-33-TJC-SJH |

**SENTENCING MEMORANDUM**

Defendant MATTHEW CHRISTOPHER YATES files this memorandum to assist the Court with the sentencing scheduled for **2:00 p.m.** on **January 6, 2026**.

Defendant was charged in a two-count Indictment on March 23, 2022 with violations of 18 U.S.C. § 2422(b) (attempt to entice a minor to engage in illicit sexual activity) and 18 U.S.C. § 2251(a) and (e) (attempt to entice a minor to engage in illicit sexual activity for the purpose of producing a visual depiction of such conduct). [Doc. 15] The offenses were committed against an undercover law enforcement officer posing as a minor in the context of "an online undercover operation" which led to the Defendant's arrest on March 14, 2022. [Doc. 1 at 4] The Defendant has been incarcerated since his arrest. On August 27, 2025, the

Defendant entered into a Plea Agreement pleading guilty to Count Two of the Indictment. [Docs. 15, 71, 72].

This memo seeks to show why a sentence of 15 years would be "sufficient but not greater than necessary" to fully meet the purposes of 18 U.S.C.A. § 3553(a).

> *It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.*
>
> *Koon v. United States*, 518 U.S. 81, 113 (1996).

## PSR ADVISORY GUIDELINES RANGE

The Presentence Investigation Report, using the 2025 Guidelines Manual and amendments, calculated a Total Offense Level of 33 which, with the calculated criminal history (CH I), results in an advisory Guidelines range of 135-168 months. PSR ¶ 46. As the PSR notes, since "the statutorily required minimum sentence of 15 years is greater than the maximum of the applicable guideline range; . . . the guideline term of imprisonment is 180 months." PSR at ¶ 86.

The defendant has no unresolved objections to the PSR.[1]

[1] Counsel for the Defendant and counsel for the United States agreed that the draft PSR incorrectly concluded (in PSR ¶ 30 and ¶ 96) that 18 U.S.C. § 2259(b)(2) or 18 U.S.C. § 2259A would be applicable to the facts.

## CONSIDERATION OF § 3353(a) FACTORS

### (1) Circumstances and Characteristics

Under 18 U.S.C. § 3553(a)(1), a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant."

*The nature and circumstances of the offense*

Over a three-day period in the summer of 2021 FBI agent Daniel R. Moxley (in the guise of a 14-year-old girl) interacted with Matthew Yates, then 26. [Doc. 1 at 3-11] Seven months later, in February 2022, SA Moxley (again as an undercover officer posing as a 14-year-old girl) again interacted with Yates online. [Doc. 1 at 11*ff*] During the interaction, Yates initiated conversation about whether the SA wanted to record the sexual activity with a phone. [Doc. 1 at 73-75] By March 10, Yates and the SA had planned to meet in person and made an agreement to do so on March 11, 2022. [Doc. 1 at 66-80] Yates was arrested "without incident" when he arrived at the meeting place. [Doc. 1 at 80][2]

[2] The plea to count two was based on a portion of the interaction on March 10 in which Yates asked whether the undercover officer would want a recording made of her "first time." [Doc. 1 at 74] Although he left the decision up to "her" (the agent accepted), he was prepared to use his phone or "hers" to record the sexual activity. [Doc. 71 at 23-24] There was no evidence that he had physically met or recorded any actual underage victim at any prior time.

*History and characteristics of the defendant*[3]

Matthew Yates grew up in an intact family of six. *See* PSR at ¶¶ 56-61. He is the third of four children, with an older brother 35, an older sister, 33; and a younger sister, 26. PSR at ¶¶ 59-61. His parents are still married. There is no family history of physical or sexual abuse or substance abuse.

From middle school onwards, Matthew has experienced occasional anxiety, depression and suicidal thoughts. *See* PSR at ¶ 70. Over his life Matthew has had significant problems with pornography (he began to look at pornography when he was about 11 or 12), but has had very little actual sexual experience. He has had two dating relationships in his life, the second with his (now) ex-wife.[4] He has had sex only with his wife.

Yates attended the University of Central Florida, graduating with a degree in philosophy. *See* PSR at ¶ 74. After graduating he attended Regent College in

---

[3] Mr. Yates was submitted by counsel for a psychiatric and psychosexual evaluation by Dr. George Deitchman, Ph.D., LMFT, who interviewed him and administered a battery of tests. The evaluation reports (one from 2022 and one from 2024) have been provided to the Court under seal because it contains personal health information. The remaining details in this section have largely been drawn from that report, the PSR, and various character letters attached as Exhibit A.

[4] When arrested, his wife was pregnant with the couple's first child, a son. *See* PSR at ¶¶ 63-65. She filed for divorce, which resulted in a Consent Final Judgment of Dissolution in late 2022. Matthew has never met or had any meaningful contact with his child.

Vancouver, BC, where he received a master's degree in theological studies. *See* PSR at ¶ 75.

In 2019 he took a teaching job at a classical Christian school in Northeast Florida, teaching a wide variety of classes, including New Testament, various literature classes, sixth grade mathematics, and multiple classes in logic. He taught students in the sixth through tenth grades. *See* PSR at ¶ 77. There has been no suggestion that he interacted sexually with any student.

The character letters[5] describe a young man with many admirable qualities, explaining that he is "a humble young man who has a high level of integrity," Ex. A6; "very intelligent," and "a deep thinker," Ex. A5; "modest in demeanor but intelligent and engaging in thought and conversation," Ex. A8; "sensitive and compassionate," Ex. A9; a "gentle soul and a peacemaker," Ex. A3; "characterized by kindness and diligence," Ex. A4; "an excellent teacher," Ex. A10).

His older sister, Ashley Henderson, with whom he is close, referred to "his good, moral character." Ex. A1. Her husband Thomas described a relationship of

[5] Because of the length of the pendency of this case, some of these letters were prepared in 2022, some in 2025. The index notes which ones were prepared previously.

"laughter, intellect, emotional vulnerability, and empathic support," but also "fighting through depression" and struggling through "his moral successes and his moral failures." Ex. A2.[6]

Several writers saw the offense as an aberration when compared to his whole life "While not trying to negate the recent behavior Matthew exhibited in 2022, we genuinely believe it was out of character, and that he is truly repentant and desirous of restoration." Ex. A7.

His parents, too, express hope that there will come a time when he can be returned to society:

> We know that Matthew is far from perfect and his actions that landed him in jail are inexcusable. However, we know that through rehabilitation Matthew can lead a life that will continue to help others. His life up to this tragic point has been free from any trouble with the law. We talk to him every night and see that his heart is to not continue in wrongdoing.

Ex. A11.

It was this disconnect between his outward character and the offense he has plead guilty to that led counsel to submit him for a psychosexual evaluation.

[6] Both Ashley and Thomas are Licensed Clinical Social Workers.

Testing shows that he is attracted to post-pubescent females, not males or prepubescent females. Dr. Deitchman summarizes:

> This is a 27-year-old male who functions like someone much younger. He was raised in a very closed and tight knit community. His dating was pretty much without sex. He put sex in a box away from his family and others in his church community . . . . He reports becoming addicted to porn, and apparently later he kept his outside online flirtations away from his wife and anyone who knew him. He had this little secret "safe" life where he could be more forthcoming about his sexual fantasies . . . . He was apparently the child who never did anything wrong, so much so that when he was using the family computer to look at porn and they found out, they blamed his older "rebellious" sister, since she was more of a rule breaker.

2022 Deitchman Report at 8.

The report says that Matthew is not a pedophile, and describes him as "developmentally delayed," suggesting that his

> behavior would not qualify as a pedophilic disorder. It is more understandable to think of him as someone who is a 14-year-old himself emotionally and developmentally, though he is cognitively an adult and in the body of a 27-year-old. His behavior was law-breaking, not sexually deviant . . . . He was still like a little boy sneaking around, rather than the adult finding more typical adult ways to meet his sexual needs.

*Id*. at 7-8. The 2024 report suggests that Matthew "may have a neurocognitive deficit in the social cognition area similar to someone on the autism spectrum." Update letter (Feb. 3, 2024).

After his arrest, Yates honestly confessed to the agents. He expressed relief that he had been arrested "because he 'wanted to be forced to be stopped.'" [Doc. 1 at 81; *see also* PSR at ¶ 27] At all times—even as he was committing the offense —Mr. Yates saw his actions as morally repugnant. He finds his own behavior shameful and baffling.

For these reasons and under these circumstances, a guideline term of 180 months imprisonment would be "sufficient but not greater than necessary" to meet the purposes of 18 U.S.C.A. § 3553(a).

**(2) Respect for the Law, Deterrence, Public Safety, Rehabilitation**

Under § 3553(a)(2), the sentencing court must also consider

> the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Since his arrest, Mr. Yates has had to recognize that his own actions would necessarily result in incarceration for the next fifteen years. He has been continuously incarcerated for over three-and-a-half years.

The stated goals of § 3553(a)(2)(A, C)—just punishment and specific deterrence—are fully met in this sentence. Mr. Yates has also suffered various collateral consequences of his behavior, including his arrest and 45 months of imprisonment, the loss of his marriage, and the loss of any relationship that he could have had with his son.

The goal of § 3553(a)(2)(B) (general deterrence) is also advanced, as investigations and prosecutions such as this one serve to remind the public that law enforcement actively seeks violators for arrest and prosecution. It is to be hoped that the goals of § 3553(a)(2)(D) may be met during the defendant's lengthy incarceration.

For these reasons and under these circumstances, a sentence of 180 months imprisonment, followed by five years of supervised release, would be "sufficient but not greater than necessary" to meet the purposes of 18 U.S.C.A. § 3553(a).

**(3) Available Sentences**

Under § 3553(a)(3), the sentencing court must also consider "the kinds of sentences available." In this case, as the PSR notes, since

> Based upon a total offense level of 33 and a criminal history category of I, the guideline imprisonment range is 135 months to 168 months. However, the statutorily required minimum sentence of 15 years is greater than the maximum

> of the applicable guideline range; therefore, the guideline term of imprisonment is 180 months.

USSG §5G1.1(b)." PSR at ¶ 86. Therefore, the Court cannot impose an alternate sentence such as probation, house arrest, or a split sentence—only incarceration is permitted.

In the present case, the Guidelines term of 180 months imprisonment would fully meet the goals of 18 U.S.C. § 3553(a).

**(5) Sentencing Policy**

Under § 3553(a)(5), the sentencing court should consider "any pertinent policy statement" issued by the Sentencing Commission. Undersigned counsel is aware of no such policy statements.

**(6) Avoiding Disparities**

Under § 3553(a)(6), the sentencing court must also consider "the need to avoid unwarranted sentence disparities" among similarly situated defendants. In the case of a statutory minimum mandatory sentence, 18 U.S.C. § 3553(a)(6) does not weigh against the imposition of the minimum mandatory sentence of 180 months incarceration.

**(7) Restitution**

Under § 3553(a)(7), the sentencing court must also consider "the need to provide restitution to any victims of the offense." In the present case, the 18 U.S.C. § 3553(a)(7) factor does not weigh against the imposition of a term of imprisonment of 180 months, as restitution is not applicable in this case. *See* PSR ¶¶ 31, 99-100.

**SUMMARY**

In summary, there are several factors which suggest that the minimum mandatory term imprisonment is appropriate. The defendant

- accepts responsibility and is remorseful;
- has no prior criminal record;
- does not profile as a pedophile;
- is unlikely to reoffend; and
- has a supportive family.

Also, pursuant to the Plea Agreement, the Government agreed to recommend that the defendant be sentenced to the "low end of the applicable guideline range," that is, a term of 15 years (180 months) imprisonment. [Doc. 71 at pp. 4-5]

In light of these considerations, Defendant suggests that the guidelines sentence of 180 months imprisonment, followed by five years of supervised release, would be "sufficient but not greater than necessary" to meet the purposes of 18 U.S.C.A. § 3553(a).

## CONCLUSION

For the reasons stated above, and based on the Plea Agreement, the PSR, and the other materials before the Court, Defendant requests that the Court impose the minimum mandatory sentence of 180 months to be followed by a 5-year term of supervised release.

DATED at Jacksonville, Florida this 30th day of December, 2025.

BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
Professional Association

By: s/ Henry M. Coxe III
Henry M. Coxe III
Florida Bar No. 155193
E-mail: *hmc@bedellfirm.com*
Brian T. Coughlin
Florida Bar No. 0713732
Email: *btc@bedellfirm.com*
101 East Adams Street
Jacksonville, FL 32202
(904) 353-0211
(904) 353-9307 Facsimile

Counsel for Defendant Matthew Christopher Yates